# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| MONICA GLEASON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 15-0401-CV-W-DGK-SSA |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Monica Gleason petitions for review of an adverse decision by Defendant, the Acting Commissioner of Social Security ("Commissioner"). Plaintiff applied for supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The administrative law judge ("ALJ") found Plaintiff had multiple severe impairments, including bipolar disorder, substance use disorder, anemia, disorder of the left leg and ankle, and vision impairment, but retained the residual functional capacity ("RFC") to perform work as a document preparer, polisher, or pager.

As explained below, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is therefore AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed the pending application on June 29, 2012, alleging a disability onset date of November 1, 1998. The Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to an ALJ. On December 10, 2013, the ALJ held a hearing at which

Plaintiff amended her disability onset date to June 29, 2012. On January 24, 2014, the ALJ issued a decision finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on March 31, 2015, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner's decision to deny SSI benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

## Discussion

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. § 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner

reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

Plaintiff argues that the ALJ improperly: (1) failed to fully and fairly develop the record, resulting in an erroneous finding that Plaintiff did not meet Listing 12.04; and (2) weighed the medical evidence, resulting in a flawed RFC determination. These arguments are without merit.

**I.      The ALJ properly found that Plaintiff did not meet Listing 12.04.**

First, Plaintiff argues that the ALJ failed to fully and fairly develop the record, resulting in a finding that Plaintiff failed to meet Listing 12.04. Pl.'s Br. 17 (Doc. 9). The Commissioner contends that Plaintiff failed to meet her burden of demonstrating that her medical impairments met or exceeded Listing 12.04. Def.'s Br. 7-16 (Doc. 10).

At Step Three, a plaintiff must show that her impairment or combination of impairments meet or equal all of the specified criteria in a listing. *See Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). Listing 12.04 addresses affective disorders "[c]haracterized by a disturbance of mood, [and] accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. Plaintiff must meet the requirements of both paragraphs A and B to meet Listing 12.04.[2] The ALJ found Plaintiff satisfied paragraph A, and only paragraph B is at issue here. Paragraph B requires that the affective disorder result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration persistence or pace; or repeated episodes of extended decompensation. *Id.* § 12.04(B).

---

to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

[2]A claimant can also satisfy Listing 12.04 by meeting the requirements of paragraph C. However, Plaintiff does not assert that she meets the paragraph C criteria, so the Court will not consider it.

The ALJ found that Plaintiff had only mild restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of extended decompensation. Plaintiff argues that the ALJ's findings regarding her activities of daily living and social functioning were not supported by substantial evidence.[3] The Court now turns to these two criteria.

First, the ALJ concluded that Plaintiff has no more than a mild restriction in her activities of daily living. The record indicates that Plaintiff is able to eat, shower, listen to music, watch television, and leave her home twice a week to attend church. R. at 41, 63, 289. Her doctors and nurses observed her to have good to fair grooming and hygiene. R. at 362, 423. Plaintiff testified that she should elevate her leg to prevent swelling, but she stays so busy with "church and stuff" that she is unable to do so. R. at 59-60. Given this record, the Court holds that the ALJ's finding of a mild restriction in daily living is supported by substantial evidence. *See Ge Xiong v. Colvin*, 995 F. Supp. 2d 958, 981 (D. Minn. 2014) (finding that substantial evidence supported finding of mild restriction in activities of daily living where claimant had ability to independently eat, engage in activity, and take care of his hygiene).

Substantial evidence likewise supports the ALJ's finding that Plaintiff has only moderate difficulties in social functioning. Though Plaintiff testified that she often loses her temper and becomes violent, she also testified that she leaves her home twice a week to attend church, and is able to visit with her grandchild. R. at 40, 50, 59-60. Nurse Practitioner Florence Oni reported that Plaintiff had an "[a]greeable, [p]ositive, [c]ooperative" attitude, R. at 441, and Larisa Konova, M.D., described Plaintiff as "cooperative" and "goal oriented." R. at 361. These facts constitute substantial evidence supporting the ALJ's finding of a moderate restriction in social

---

[3] Plaintiff also argues that the ALJ erred in discounting the opinions of a nurse practitioner and licensed social worker, which support her claim that she meets this Listing. The Court addresses this argument below, and finds that the ALJ did not err in discounting these opinions when assessing either the Listing criteria or Plaintiff's RFC.

functioning. *See White v. Colvin*, 129 F. Supp. 3d 813, 833 (E.D. Mo. 2015) (affirming ALJ's finding of moderate difficulties in social functioning based on evidence that claimant would often leave her home, was cooperative during health examinations, and had an appropriate demeanor at the hearing).

Because substantial evidence on the record supports the ALJ's finding that Plaintiff did not meet Listing 12.04, the ALJ's finding at Step Three was not in error. And, because there was sufficient evidence on the record to make a decision regarding the contested paragraph B criteria, the ALJ did not err by failing to further develop the record. *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) (finding that the ALJ did not err by failing to develop the record where there was evidence documenting the effects of claimant's mental disease and the ALJ's decision regarding the contested criteria was supported by substantial evidence).

**II.     The ALJ properly weighed the medical evidence, and Plaintiff's RFC is supported by substantial evidence on the record as a whole.**

Plaintiff next takes issue with the ALJ's treatment of the opinions of Nurse Practitioner Cora Franklin ("Ms. Franklin") and Licensed Clinical Social Worker Cheryl Reed ("Ms. Reed"). Plaintiff alleges that the ALJ erred in discounting their opinions and, as a result, the ALJ's RFC findings were not supported by substantial evidence.

"[T]o establish a disability or impairment, the Social Security Administration requires 'evidence from acceptable medical sources.'" *Crawford v. Colvin*, 809 F.3d 404, 408 (8th Cir. 2015) (quoting 20 C.F.R. § 416.913(a)). The list of acceptable medical sources includes licensed physicians, psychologists, and optometrists. 20 C.F.R. § 416.913(a). In addition to these acceptable medical sources, an ALJ may consider evidence from other sources, including nurse practitioners and social welfare agency personnel. *Id.* §§ 416.913(d)(1), (d)(3). An ALJ has

5

discretion to consider opinions from these other sources "*so long as* [they are] not wholly inconsistent with other opinions." *Crawford*, 809 F.3d at 408.

Here, the ALJ exercised his option to discount *portions* of the opinions of a nurse practitioner, Ms. Franklin, and a social worker, Ms. Reed. Specifically, the ALJ gave "very little weight" to the Global Assessment of Functioning ("GAF")[4] scores they each assigned to Plaintiff.[5] R. at 18-19. Ms. Franklin assigned a GAF score of 31, R. at 425, which the ALJ noted was "clearly inconsistent with [Plaintiff's] diagnosis of only 'moderate' bipolar disorder," the findings that Plaintiff's general knowledge was intact, and reports that she was logical and coherent.[6] *Id.* at 18, 423. Ms. Reed assigned the slightly higher GAF score of 33, R. at 449, which the ALJ observed was inconsistent with other record mental status notes taken by Ms. Reed. R. at 446 (reporting that Plaintiff's thought content was "logical/coherent," thought process was "intact," and impairment of judgment was "minimal"). Because these GAF scores were internally inconsistent and inconsistent with the record, the ALJ did not abuse his discretion in discounting them. *See Lacroix v. Barnhart*, 465 F.3d 881, 887-88 (8th Cir. 2006) (upholding ALJ decision to give nurse practitioner and therapist opinions less weight where those opinions were inherently inconsistent and inconsistent with other evidence in the record).

Further, the ALJ relied on other record medical evidence from acceptable medical sources in formulating Plaintiff's RFC—even finding that Plaintiff was *more* limited than the

---

[4] The GAF is a numeric scale ranging from zero to one hundred, representing the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed. rev. 2000) ("*DSM*").

[5] The ALJ did, however, rely on other opinions proffered by Ms. Franklin and Ms. Reed. *E.g.*, R. at 15 (citing Ms. Franklin's opinion that Plaintiff exhibited a cooperative attitude and behavior within normal expectations), 19 (citing Ms. Reed's assessment for the proposition that Plaintiff's mental status was "grossly normal").

[6] According to the *DSM*, GAF scores between 31-40 indicate that an individual has an "impairment in reality testing or communication . . . or [a] major impairment" in multiple areas, including work, judgment, thinking, or mood. Am. Psychiatric Ass'n, *supra*, at 34.

assessment provided by one acceptable medical source.  R. at 23 ("[T]he most recent medical evidence indicates that the claimant is more limited than as indicated by the State [psychological] consultant."), 83 (state consulting psychologist's report).[7]  Because the ALJ did not err in discounting portions of Ms. Franklin's and Ms. Reed's opinions and properly relied on other medical evidence in formulating Plaintiff's RFC, Plaintiff's argument is without merit.

Plaintiff also argues that the ALJ "engaged in 'playing doctor,'" Pl.'s Br. 20, when he made two separate assertions: first, when he opined that the GAF score assessed by Ms. Reed was based on economic issues; and second when he stated that Plaintiff "would probably not suck her thumb" during the work day because she did not engage in that behavior while in the hearing's high-stress environment.  R. at 22.  This argument holds no weight.  First, because the ALJ discussed his other reasons for discounting the GAF score—the inconsistencies between Ms. Reed's GAF evaluation and other record evidence—any error in his GAF score commentary was harmless.  *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) ("To show an error was not harmless, [Plaintiff] must provide some indication that the ALJ would have decided differently if the error had not occurred.").  Second, the ALJ is allowed to use his personal observations of Plaintiff's behavior during the hearing to make credibility determinations.  *Johnson v. Apfel*, 250 F.3d 1145, 1148 (8th Cir. 2001) ("The ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations.").  The ALJ's decision to discount Plaintiff's case worker's testimony that Plaintiff engaged in thumb-sucking behavior "when she [would] become irritated or frustrated or overwhelmed," R. at 66-67, was proper.  Therefore, the Court rejects this argument.

---

[7] Plaintiff also argues that the ALJ's failure to seek a consultative psychological evaluation was in error.  However, the record contains a Psychiatric Review Technique form, and the ALJ indicated that he took this evaluation into consideration when formulating Plaintiff's RFC.  R. at 23, 82-85.

## Conclusion

Because substantial evidence on the record as a whole supports the ALJ's opinion, the Commissioner's decision denying benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date:  September 16, 2016

/s/ Greg Kays
GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT